# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed March 28, 1898.

LEWIS A. GUSDORFF
VS.
SOLOMON SCHLEISNER, ET AL.

*Moses R. Walter* and *Charles W. Field* for plaintiff.

*Isidor Rayner* and *Moses Sonnehill* for defendants.

SHARP, J.—

The bill in this case was filed August 19, 1896, by Gusdorff against his partner, Schleisner, to compel Schleisner to pay up his agreed contribution to the capital stock of the partnership; to obtain a dissolution of the partnership, the appointment of receivers, an injunction to restrain Schleisner from drawing certain funds he had on deposit in various banks and financial institutions, and for general relief.

An injunction was granted and a receiver appointed ex parte.

Schleisner filed an answer August 25, 1896, which answers all the allegations of the bill. In paragraph 11 the defendant denies the jurisdiction of the Court to decree the specific performance of the contract of partnership and to restrain him from drawing the money on deposit, and prays that this defense may be considered the same as if interposed by demurrer. On the same day a motion to dissolve the injunction was filed. This motion was set down for hearing on the demurrer contained in the answer. After argument an order was passed sustaining the demurrer and dissolving the injunction. An appeal was taken under Code, Article 5, Section 25, &c., and the order was affirmed. The order of the Court of Appeals did not remand the case.

The defendant now objects to all proceeding in this Court because there has been no remand.

The motion to dissolve was set down in the demurrer. The order passed in this Court was that the demurrer be sustained and the injunction dissolved. The bill was not dismissed. When this order was affirmed, this branch of the case was finished. Only questions raised by the demurrer were in issue; the balance of the case was not before the Court. The order of the Court of Appeals disposed finally of the demurrer and of this branch of the case; there was nothing to remand. The other issues were unaffected, and the balance of the case must proceed in the usual way.

After the decision in the Court of Appeals, the complainant asked leave to amend the bill by inserting a paragraph, alleging that a mistake had been made in drawing the articles of partnership, it being contended that the parties had agreed that Gusdorff was not to give his entire time to the business for the first six months, and that a stipulation to this effect was omitted in the written contract. After hearing argument of counsel, an order was passed on the 21st day of October, 1897, giving complainant leave to amend the bill, which was accordingly done.

The questions now before the Court are, the alleged mistake, the dissolution and the appointment of receivers.

A number of exceptions were filed by the defendant to the evidence. The first three exceptions are based on the contention that there is no case now pending in this Court. This point has already been disposed of. These exceptions are overruled.

A number of other exceptions to the evidence were filed. The evidence excepted to relates:

(1) To proof of mistake, which is objected to because it seeks to alter a written contract by parol evidence. Parol evidence is always admissible to show fraud, surprise or mistake. The objection is overruled.

(2) The evidence relating to Schleisner's health is excepted to. This is admissible in connection with the issue of dissolution.

(3) Gusdorff's account of his interview with Dr. Friedenwald must be excluded (page 31, &c.)

(4) The evidence of Gusdorff's readiness to make his agreed contributions to the capital of the concern is admissible.

I think it clearly appears that a mistake was made in drawing the articles of partnership.

The contract is obviously imperfect. The partners are to share equally in the profits and losses. Each partner, after January 1st, is entitled to draw annually $4,000, to be charged to expenses. For convenience, I will call this salary. Each partner was to give his entire time to the business. The only exception to this rule of perfect equality is the stipulation that for the first six months, Schleisner was to draw his salary, but Gusdorff was not to do so. This inequality for the first six months is not explained in the contract.

Gusdorff's explanation is reasonable. He says he was engaged in another business in which he had partners, and which he could not close up immediately. He would not be able for the first six months to give much time or attention to the new business, while Schleisner was to give his entire time to it after July 1st. It was, therefore, just that Schleisner should receive his salary while Gusdorff should not.

Gusdorff is confirmed on the main points by Lowenstein and by Schleisner himself. Lowenstein says it was agreed that Gusdorff was to close up his other business. He was not to give his entire time to the new firm until he had closed up his old business. He says, "the $2,000 for the first six months was conceded by Mr. Gusdorff to Mr. Schleisner on account of his giving up his position and employment, and as I understood at the time, and going into partnership with Mr. Gusdorff, he having nothing to do, and taking an active interest in the business right off from the beginning; for that he was to receive $2,000."

Lowenstein was obviously friendly to Schleisner. This was shown not only by evasive answers at the critical points of the case, but by his manner on the stand.

Schleisner admits that he knew Gusdorff was in another business in which he had partners and which it would necessarily take him some time to close up. Schleisner says his duties were to begin July 1, and Gusdorff's were not, and that it was for this reason he was to be paid $2,000 extra from the first of July to the first of January.

It is perfectly certain that the contract did not correctly represent the agreement of the parties as to Gusdorff. Though the contract provided that both should give their entire time to the business from July 1st, it is clear the agreement was that Gusdorff was not to do so. Schleisner knew he was in another business. It was not intended that Gusdorff should immediately abandon his old business, sacrifice his former partners and his interests in that partnership. There is no room for any real controversy on these points. The only real difference between the parties is as to the time when Gusdorff should begin to give his entire time to the business. Schleisner says he was to do so as soon as there was work for him to do; inferentially he was to make any sacrifices to do so. In view of the fact that it was agreed that Gusdorff was to close up his old business, Schleisner's contention is unreasonable and improbable.

Lowenstein says Gusdorff was to close up his business as soon as he could, but no specific time was mentioned, so far as he knew. Gusdorff's evidence is positive that he was to have six months to close up his business; that his employees were employed by the year and their time did not expire until January 1st. In the meantime, they must be directed and controlled. Gusdorff's story of the agreement is confirmed by the contract. The fact that Schleisner was to draw salary for the first six months and Gusdorff was not to do so, in connection with the fact that they were to be equal in all other respects, confirms Gusdorff's claim that for this period he was not to give his entire time to the business. Schleisner's account of the transaction is unreasonable and improbable. He is contradicted on many points by several of the other witnesses. His manner on the stand was extremely cautious and his replies studied and evasive—so much so as to call for correction by the Court. I think the allegations of the amended bill are sustained by the proof and that the alleged mistake is made out by sufficient proof to entitle the complainant to a reformation of the contract.

Circumstances which render the continuance of the partnership or the attainment of the common end with a view to which it was entered into practically impossible justify a dissolution. Misconduct on the part of one member and the destruction of mutual confidence will authorize a dissolution.

Partnerships are organized for profit, and success depends on mutual confidence and good will. Without cordial co-operation in the business of the firm, success is impossible.

Gusdorff complained that Schleisner's conduct was such as to destroy his confidence in Schleisner, and that success was impossible for this and other reasons, particularly the condition of Schleisner's health.

It is certain that Gusdorff had good reason to believe Schleisner did not intend to proceed with the business. Schleisner's health was bad. Dr. Friedenwald sent Gusdorff word that Schleisner needed a rest and should be sent away. Afterwards Dr. Friedenwald told Gusdorff that Schleisner was in a very much run-down condition and he was not fit at that time to enter into any business engagements. Schleisner was evidently in doubt about what he should do. He was very anxious about his health. He had been advised by Dr. Friedenwald, a specialist, to consult other specialists. Dr. Friedenwald thought his condition very grave and apprehended consumption, and advised Schleisner to consult Dr. Thomas, a specialist in such diseases. He also afterwards advised him to consult Dr. Chambers.

Schleisner was himself so apprehensive that he consulted Dr. Bevan, independently of the other physicians. Before Dr. Chambers expressed a final opinion, Schleisner told Mr. Kahn he did not know whether he would go on with the business. Schleisner told Gusdorff, when he insisted on Schleisner's contribution to the capital being put up, there was no use in his making his agreed contribution to the capital if he could not go on with the business and proposed a deed of trust. It is, therefore, evident that Gusdorff might reasonably be apprehensive that Schleisner would not be able to proceed with the business on account of his health, and that he, Gusdorff, would have on his hands the sole management of a business which he did not understand, and be liable for debts of a large amount. Schleisner's failure to make his contribution to the capital was also ground for reasonable anxiety and mistrust. Debts to a large amount had been contracted and statements made to the commercial agencies about the payment of the money which must be made good or the credit of the new concern greatly injured.

Goods to a large amount had been bought and were being delivered, for which there were no funds to pay. In reply to all Gusdorff's demands for the payments of the money, Schleisner continually gave only evasive and unsatisfactory answers, postponing the payment. As a matter of fact, he did not have the money. He had on deposit in various financial institutions $5,185.74. He had already paid up $2,000 of the $10,000 he was to contribute, so that the balance due August 10th was $8,000, of which he had only $5,185.75. He says he had also from $600 to $700 in his pockets and had carried this sum on his person for five weeks. Such conduct is possible, but it is so imprudent and unusual as to be incredible without the clearest proof. But if this is true, he still needed more than $2,000 to pay the agreed sum. He says he expected to borrow this from friends. This is not confirmed. It does not appear that he made any effort to borrow it. He was certainly not prepared to make the agreed payment at the time fixed.

Without consulting Gusdorff he countermanded the orders he was given for the purchase of goods. The typewriter's evidence is clear on this point. These orders countermanding the purchases applied to nearly the entire stock.

These facts were sufficient to excite in Gusdorff's mind feelings of anxiety and distrust and to create a reasonable apprehension that Schleisner intended to abandon the partnership and to leave him saddled with debts to a large amount and to conduct alone a business in which he had had no experience, and in which, in forming the partnership, he had relied on Schleisner's knowledge and experience.

It is claimed by Schleisner that Gusdorff's action was precipitate and that he should have waited the opinion of the other physician who was to be consulted before filing a bill for receivers. If Gusdorff's suspicions were well founded, he might further reasonably apprehend that as soon as Schleisner was satisfied that his health was such that he could not go on with the business, he would sacrifice Gusdorff entirely, and by concealing his property, which was entirely money in bank, evade his liability as a partner, and

leave Gusdorff to pay the debts and manage the business alone as best he could. This necessarily meant a great loss.

It is certain that the mutual mistrust and hostility was such that the success of the partnership was impossible. The mutual good-will and confidence essential to success are entirely wanting. The objects for which the partnership was formed have become impossible. Taking all things into consideration, it makes a case in which, in my opinion, a dissolution ought to be decreed.

2 Lindley on Partnership, 581 (star page).

Harrison vs. Tennant, 21 Bevan 488.

Black vs. Dugan, 19 Green 537.

Seighortner vs. Wissenborn, 20 N. J. Eq. 177.

Atwood vs. Maule, L. R. 3 Ch. Ap. 369.

Bishop vs. Buckley, 1 Hoffman's Ch. 534.